You may proceed. May it please the Court, Counsel Aaron Lageson on behalf of Oregon. The question here is whether Oregon's allegations that the enforcement of the Program Integrity Rule against Legal Aid Services of Oregon exceeds the spending power of the federal government and correlatively violates the Tenth Amendment rights of the State of Oregon. This is a very interesting case. We don't often get Tenth Amendment cases, as you might imagine. But I want to start off with something that jumped out at me right at the beginning. The State of Oregon doesn't get a nickel from the Legal Services Corporation. Why does it have standing to bring this lawsuit? We haven't briefed the standing issue, as you know, because it hasn't been contested. We did look into it, and it's our belief that the injury to our sovereign interest in regulating the practice of law and providing access to justice to indigent Oregonians is a Tenth Amendment injury. And in addition, we have, I think, a correlative regulatory interest that's being harmed by the federal government's regulating providers of legal services. Let's argue under Lujan just for the moment. Let's say you do have standing. The cases that deal with this Tenth Amendment issue, at least in our circuit, Skinner and California, for example, and we'll get to those in a minute, all deal with issues where the federal government has said, state, in this case either Nevada or California, if you don't, in the case of Nevada, if you don't lower your speed limit to 55, we're going to take away 95% of your highway funds. And the court found that that was not an unconstitutional exaction. In the case of California, the government said that if certain changes weren't made in the Medicare arrangement that the state of California would lose all of its Medicare funding, and the court didn't find that unconstitutional. How can you argue, even if the state were the recipient of these funds, how can you argue that what is admittedly important, even if this were a direct state funding, how could that even approach the magnitude of the proposed reductions in Nevada and in California that are precedent? I have several responses to that. First off, the way I read Nevada v. Skinner, the discussion of coercion there ended up being in large part dicta, because what the court said ultimately is Congress could accomplish this regulation directly under the Commerce Clause power, and so it could preempt state law through the Supremacy Clause. Therefore, that softer hammer of the Spending Clause presents no problem here. And additionally, Nevada v. Skinner was before New York v. United States, where I think the court, Nevada v. Skinner, this court looked at correctly under Garcia at the time as Tenth Amendment questions as being more political questions, whereas I think New York v. United States kind of came back to the point where the court said it's the judiciary's job when the federal government exceeds its enumerated powers to say so. I want to go back to the question Judge Smith initially raised, because it's the same issue that bothers me. And I don't know if I got a satisfactory answer, but given that this is a Spending Clause challenge and none of the powers exercised in this program was intended to, nor does it adhere, flow to the benefit of the states, I still don't understand what the state's standing is to challenge this exercise of the Spending Clause. What's your best case that supports your standing? It may well be the Brooklyn Legal Services case, which had an analysis of the Tenth Amendment case brought by the private parties there. And what the court there said, there's a fair amount of debate about who can raise Tenth Amendment claims. And they said that even in the context of the private party raising it now. Right. And what the Second Circuit concluded, I think, is that the only party that can raise a Tenth Amendment claim is a state. So I guess because we're at the pleading stage of the case, I think we've alleged a Tenth Amendment injury. The injury is that the federal government is regulating in an area reserved to the states the practice of law. But this has never, the Tenth Amendment has never been applied in the context of a third-party recipient, has it? It's always been the state that's been denied the money before. And that's the reason why you apply it. That's the reason why they're standing. That's the reason why you apply it. If it's to a third party, I mean, I don't understand how it can be applied. And I think that's where we go back to United States versus Butler, which in terms of a factual scenario I think is the closest to this fact pattern. That was a case where the federal government, through the Agricultural Adjustment Act, was funding farmers to not grow produce. And what the Supreme Court said in that case is it's beyond dispute that this regulation of agriculture would not be within the Commerce Clause authority of the federal government. Now, of course, that has since changed. So then the question becomes if the federal government can accomplish this directly through its Commerce Clause authority and its Supremacy Clause authority, is it permissible for the federal government to accomplish this by essentially paying private citizens within a state so that the private citizens will conform to federal regulation to the detriment of state regulation? There's no problem with the federal government regulating the actions of citizens within a state, is there? Well, not if it's within its Commerce Clause authority. Oregon does not dispute that if this program integrity rule could be promulgated through an exercise of Commerce Clause authority, then the federal government would have the power to essentially preempt Oregon's contrary regulations. But it's Oregon's position here that the federal government cannot directly regulate the providers of indigent legal services to Oregonians under its Commerce Clause authority. The thing I can understand is if Oregon itself doesn't want to spend the money for it at all, its own tax monies, but the federal government is willing to spend its money for that particular purpose, on what basis can Oregon say to the federal government who is willing to spend its money, you can't spend the money in that fashion because we don't want you to do it in that fashion. We want you to do it the way we want to. Well, I think what Butler and South Dakota versus Dole stand for is that under our federalist system, when the federal government wishes to regulate private parties in a way that would ordinarily be beyond its enumerated powers, there's certain mechanisms that it can use to accomplish those goals. And what Butler says is one method that's not appropriate is essentially paying private parties to act in conformance with federal law to the detriment of state law. What South Dakota versus Dole says, perhaps, is that if the federal government was dealing directly with the state and said state, we'll give you money if you regulate the practice of law in your state in a particular way, then what would be presented to the state in that case is the choice between accepting the funds and changing its sovereign interest in regulation, or instead, pursuing the course of regulating the practice of law as is its sovereign prerogative. But following up on Judge Wu's question, can you cite any case where a third party has ever brought, let alone successfully brought, a Tenth Amendment case? Isn't it just states that have the ability to do that? Correct. There's a debate right now as to that, but it is states that Brooklyn Legal Services have the standing to raise a Tenth Amendment claim. What's that cite? It's the Second Circuit case, and it's cited in not that red brief. It's 463 F3D 219. It has a discussion of the Tenth Amendment claim there, which was brought by private parties, and the court said private parties don't have standing to bring a Tenth Amendment claim. So the Second Circuit said there was no standing, right? For private parties. For private parties, right. Only a state can bring a Tenth Amendment claim, which is in part why we're here, because in Oregon's view, the federal government's decision to regulate the providers of legal services in Oregon and require them to have physical and legal separation is in direct contradiction to the way Oregon's chosen to regulate legal services providers, and that's our sovereign injury. I know Judge Tashima just indicated his interest in this, and I'm sure my colleague Judge Wu would agree with this. We would like to invite the State of Oregon and also your colleagues on the response to take the opportunity to brief us post-argument on the issue of standing. Okay. Specifically, does the State of Oregon have the legal standing to bring this lawsuit? We will provide. Is there any time frame that you would like to brief? Let's say within 21 days. Let's file them simultaneously. I don't think we need any back and forth. Within 21 days of today, if the clerk could just make a note of that in our records, if you will, please. That way it will help us to address that issue as well, because this seems to be a unique situation where you have a state making a Tenth Amendment claim not for itself but for the benefit of a third party, or at least our government. Yeah, and I think we disagree that it's not for ourselves. Oregon's interest is to be able to carry out its legal services program in the manner that it's decided to regulate. Oregon wants the legal services providers in Oregon to be able to eliminate legal and physical separation in order to, one, I don't understand. Oregon's money is not involved in this in any way, shape, or form, is it? I don't think that's the test. The purpose was, I thought, to economize and so to make sure there's no wastage of funds, but it's not wasting Oregon's funds. One, Oregon's money is that Oregon does fund its legal services program through circuit court filing fees. So there is Oregon money. I thought I understood your argument to be yes. In fact, it is Oregon money in the sense that it comes from Oregon citizens that funds the Oregon legal services program, and you want to make those program dollars more efficient, right? Correct. So in a sense, you're challenging what you consider to be a wasteful practice. Yes, and we think that goes within Oregon's sovereign prerogative to regulate the practice of law within the state of Oregon and that the federal government does not have, with its enumerated powers, to condition a grant to a private party on the ground that the private party essentially agreed to conduct its operations in a manner that conflicts with state law, having not dealt with the state directly on this issue. The thing that you want to do is Oregon wants to use the federal money to substitute for the state money, which is supposedly being saved by this economizing of having the same facilities, same employment, et cetera, et cetera. No, that's not that at all, and I think if you take a look at the configuration proposal that LASO submitted and was rejected, the configuration proposal envisions the entities remaining quite separate, just being able to share some physical space and divide administrative costs rather than having complete duplication. You asked for three minutes. We've had such a fun time talking about it so far that I'd like to go on. Why don't you let us hear from them? We'll give you a full three minutes of rebuttal when the time comes, okay? Thank you, Your Honor. Thank you. I guess we have two of you, Mr. Freeman and Mr. Collette. How are you going to divide up your time? Good morning, Your Honor. I'm William Freeman, and we'd like to divide it down the middle. I'd like to take seven and a half minutes. Very good. We'll let you all regulate yourselves on that. I hope Mr. Collette will wave his hands frantically. What usually happens is that when you talk about a division, the other person completely forgets the person sitting at the table, and they're gesticulating wildly, and the other person doesn't see them. Okay. Good morning. May it please the Court. William Freeman for the Legal Services Corporation. And I'd like to pick up on the questions that the panel had for my opponent. This is an unusual case. We have not briefed the standing case, the standing issue, and we'll be pleased to do that. We've operated under the assumption that Oregon attempts to set forth an injury to the State of Oregon. We believe, as we've briefed, that that injury is not an injury to the State. It's not anything that the Tenth Amendment has ever been used to address. And in fact, as I think she conceded, there is no case anywhere that so indicates. There is no case. To your knowledge, Counsel, has the Supreme Court or any circuit courts ever found that Congress's financial inducement has been found to be coercive? No. In fact, the Ninth Circuit has said there may be coercion cases, but we haven't found them. And to our knowledge, the Supreme Court has never found them. The one Supreme Court case that Counsel has cited, which was the Butler case, which is basically a New Deal-era case, has been discarded for the primary holding. And it's interesting that Counsel referred to South Dakota versus Dole, because in that case Justice O'Connor was writing for the dissent in upholding the position that the State would like to uphold here. But what's interesting about that case is that the majority said very clearly that Congress has acted indirectly under its spending power. We find that this legislative effort is within constitutional bounds, even if Congress may not regulate drinking ages directly. In other words, Congress couldn't tell. Under the 21st Amendment, Congress couldn't say to the 19-year-olds in South Dakota, you can't drink beer, but it could withhold highway funds and indirectly accomplish the same result by getting South Dakota to pass that legislation. Is it the Legal Services' argument that this is really a spending clause case, not a Tenth Amendment case? Or do you concede that, in fact, if you assume arguendo that there is standing and that there is some basis to it, are you conceding that this is, in fact, a properly Tenth Amendment case as opposed to a Commerce clause case? Well, Your Honor, it's an interesting question. And you're right. We don't often argue the Tenth Amendment. Even though it's in bronze on the door leading into this courtroom. You stopped. I trust and gazed fondly at it. I read it carefully, Your Honor, once again. Mr. Freeman, there was a companion case, right? Yes, there is. Filed by the Legal Aid Services of Oregon? Correct. What happened to that case? Is that still pending? That case is pending. What is in the record of this Court is the trial judge's dismissal of the State of Oregon complaint and dismissal of most of the companion lasso case. The Court, Judge Papik, the magistrate judge, followed by the district judge, then set the case for summary judgment on the as-applied part of the case, ruled last year in favor of Legal Services Corporation that there was no as-applied constitutional violation. So that case has been completely dismissed and is, as a matter of fact, we just received the opening brief from lasso in this Court last Friday. So that's working its way up to this Court. I see, okay. Now, so as I understand it, this case is an attack by the State on your regulation, right? Yes, Your Honor. You know, the one that requires a separation, right? Yes, Your Honor. What happened in your board that decided to defend the regulations, I guess, is that right? Absolutely. Was there much debate about it, just out of curiosity, whether you should defend it or not? None. No? None. All right. Your Honor, I did want to get back to Judge Smith's question, and that is, it's the spending clause and the Tenth Amendment are really flip sides of the same federalism coin. And the question really is, what is the proper allocation of powers between the Federal Government and the State Governments? And in our view, this is really a case about political choices. And it really, as indicated by Judge Wu's question, the argument that the State makes is one that is more properly addressed to the Oregon legislature. In other words, we'd like to run our legal services program the way we see fit. We don't want to have an inefficient system. So would you please fully fund our system so that we don't have to rely on Federal money because the Federal Government wants to attach strings to its grant. The Federal Government is entitled to attach those strings. The State of Oregon is entitled to run its own legal services program in any efficient way it wishes. And as the Ninth Circuit has stated, and I believe that was Nevada v. Skinner, the State is a sovereign government. It can raise more taxes. It can reallocate the funds that it has. We're talking about $2.9 million a year that Congress, through Legal Services Corporation, gives to the State of Oregon, to the grantee in the State of Oregon, LASO. And the State of Oregon could say, you know what, thank you, but no thank you. We don't want the money. We'll raise the money or allocate the money ourselves, and we'll run the system exactly the way we see fit. What we believe the State can't do is say, yes, thank you very much for the Federal funds, but we don't accept your conditions because they're an incursion on our citizens. Now, when you say thank you very much for the funds, it almost sounds like you are accepting the argument of the State that even though these are going to, I gather technically this is a branch of the State Bar of Oregon, is that right? Whatever it is that's receiving the funds, is that right? It's a program that is administered by the State. Okay. It sounds almost like you were saying that Oregon could make these choices as if that were part of the State of Oregon. But really, this entity, is it wholly owned by the State Bar of Oregon? No, I don't believe that it is. It's a corporation. It's a corporation, and who owns this one? Is it a mutual benefit corporation? How would you call them here in Oregon? I believe so, although I'm treading on dangerous ground here. I couldn't say for sure. Okay. But the State of Oregon owns no interest in the corporation, right? That's my understanding, Your Honor. Okay. You don't know. I can ask your opposing counsel. But do you know who does own it? I don't. It probably has no owners, doesn't it? I don't know that there is an owner. Probably a nonprofit, isn't it? But, Judge Smith, I'm not accepting the State's argument. What I'm saying is that I'm agreeing with the Court that this is an unprecedented attempt to bend the Tenth Amendment to purposes that it was never intended to support. And we're not aware of any case in which a court, whether the Ninth Circuit or the Supreme Court, has said we will extend the Tenth Amendment's protections to insulate the citizens of the State from policy decisions by the Federal Government. In fact, all the jurisprudence is that the Federal Government can make policy decisions. What it can't do, it can't commandeer the means of governing. The Tenth Amendment really protects the governmental integrity of the State. So the Federal Government can't say you shall regulate the handguns in this State. We're going to tell you who's qualified to be a judge. You have to waive sovereign immunity. Those cases we understand. But the Federal Government can induce through its spending policy the actions of the States. And that really is a spending clause argument. And I think my time is up. I'm going to say you're treading on dangerous ground with Mr. Collette. So, well, thank you. Thank you, Your Honor. Matthew Collette with the United States Department of Justice on behalf of the interveners, United States of America. I don't plan to add too much to the excellent presentation of Mr. Freeman. You can ask a question for me just out of curiosity. And maybe you don't even know. Or why did the government find it necessary to intervene in this case? Did you suspect the legal services were not going to defend their own regulation? No. We view it as our duty under the 28 U.S.C., and I don't remember the exact section, to intervene to defend the constitutionality of Federal programs. There are lots of Federal programs that are challenged. I know that. DOJ has not intervened. We are notified. And in many cases you don't intervene, right? That is true. So my question is why did you choose to intervene in this case? You thought it would not be adequately defended by? No, that's not at all the reason. They certainly didn't know that Mr. Freeman was going to represent them. Right. Had we known, we would have deferred. We intervened in this case because, in our view, Oregon is attempting to use the Tenth Amendment and the Spending Clause as essentially a reverse supremacy clause that enables the state to negate Federal policy simply by passing their own program and saying this interferes with our judgment. If there is a coercion theory valid, it is difficult to understand how there's coercion of the state here, given that with the existence of the Federal program, they, after that, enacted a program that conflicts for the express purpose of bringing this action. So to the extent they're trying to say coercion, I don't think it works. The other point I wanted to address, counsel seems to be arguing that the Spending Clause is only operative if Congress has commerce power, and that's just not true. The courts have recognized repeatedly that, as Mr. Freeman said, the government can attach strings to its funding. Rust v. Sullivan is a good example of that. It's not required that there be a separate power, a separate clause in the Constitution. The Spending Clause and the Necessary and Proper Clause combine to allow Congress to do this. That's actually the pursuit of the general welfare provision, isn't it? Yes. Okay. I mean, there are limits to the spending power, as Dole makes clear. You've got the four-prong test of Dole. But there is no requirement that the provision involve commerce. Well, let me ask. One of the requirements is that the restrictions are relevant to the Federal interest in the project. What is the relevant Federal interest in the project? Yes. Oh, they absolutely are. They're called the Program Integrity Regulations because they are designed to ensure that the Federal fund, that the entities that get funded, focus on the tasks that the Federal government wants them to fund. Or maybe that the Federal government does not want them to focus. Exactly. One can look at it either way. And the private entities who receive funding under this are going to have their opportunity to challenge it. In fact, I think one important point here in talking about that, turning to Brooklyn Legal Services, a case that I litigated as well. The court did not. By the way, is that cert still pending, I think? No, cert was denied. Denied, right, yeah. Yes. And the court did uphold the regulation there. The Tenth Amendment holding there is simply that private parties can't bring Tenth Amendment claims. The court didn't imply that the States can bring a claim challenging essentially unconstitutional conditions imposed upon private parties. And there is a case cited in the LSC's brief, Pace versus Bogalusa County School Board, which actually draws that distinction and says the State entity shouldn't be the one making an unconstitutional conditions challenge. Well, isn't what happened in Brooklyn Legal Services in some way a vindication of the State of Oregon's position? Because if the Supreme Court, by denying cert, is in effect agreeing with the Second Circuit that a private party can't bring this action, then the only entity left that could do it would be the State, arguably. Is that a legal position that's defensible? Well, the court in Brooklyn Legal Services didn't say a private party can't bring an action. No, no, I mean with respect to this, the funding issue. No, I don't think so, because the Tenth Amendment or Spending Clause claim is simply meritless here. There is no Tenth Amendment claim. Right. So what you have is a constitutional conditions claim that can be brought by the private parties, which they did in Brooklyn Legal Services, did not prevail, which they are doing here, which they did in Legal Services of Hawaii on a facial challenge, which this Court upheld the restrictions here. So your position is that the Brooklyn Legal Services really stands more for the proposition that the private party can't bring the claim here, but it kind of leaves open the issue of the Tenth Amendment claim. Who can bring it? Is that what you're saying? Absolutely. It didn't say there is a Tenth Amendment claim. I understand. It just said, or that a Tenth Amendment claim would even be cognizable. It just said if there is a Tenth Amendment issue, you're not the one to bring it. Right. But given that Oregon receives no funds under this program, is not subject to any restrictions whatsoever, that dooms both the Tenth Amendment and the Spending Clause. So if you take the position that Mr. Freeman articulated, that in effect the spending power is out there and that the Tenth Amendment is a gloss over that, it's just kind of a continuum. It's a question of how far you can go. And any way you look at it, if the State receives no money, by definition, there can't be a spending power issue. Is that what you're saying? Yes. That's exactly what we're saying. It also dooms, to the extent they have a separate Tenth Amendment claim. Admittedly, it was unclear in their opening brief whether they were attempting to do that. I think in their reply brief they sort of segued into a spending clause only claim, of course, with using the Tenth Amendment to get there. But to the extent they're trying to say that this separately, just its existence, interferes with Oregon's sovereign policies, I don't think they get very far.  Could I ask one more question? Sure. I see the slides are up. In your briefs, you didn't challenge standing. But I know the Department always looks at standing. So I'm sure you looked at it and you must have had some made a preliminary assessment at the least, right, on the standing issue? Can you tell us what that was? Just briefly? I think it boils down to the belief that they were trying to press a separate Tenth Amendment claim independent of receiving the Federal funding or not receiving the Federal funding. You're trying to regulate the legal profession. That's not dependent on the funding issue. Yes. And I think now, and maybe they can clarify, I think now they're really saying  I got you. Thank you very much. One final response. Sorry about that. I think we're all set. But thank you very much for your argument. Ms. Lagasson, would you like to give your rebuttal, please? Sure. First, I'd like to answer the question as to what LASSO is. It's a non-profit Oregon corporation that participates in Oregon Legal Services program and receives funding from the Legal Services Corporation. So it is a private party subject to regulation by Oregon and by the Federal government through the conditions on the grant. And our claim here boils down to the fact that a condition on a grant to a private party who provides legal services in state, in Oregon, which is an area reserved to the states, is invalid if it invades the area reserved to the states. And that the Federal government does not have this power under the spending clause and, you know, correlatively, you know, that violates the Tenth Amendment if the state hasn't consented, knowingly and voluntarily, to the Federal government regulating in that area reserved to the states. And I think counsel's right. It is almost. I want to have a follow-up question, but I want to ask our clerk. We're going to give her three minutes she asked for, so we need to add on an extra minute. So give her a minute and 40 seconds if you can do that. While she's doing that, we'll start and don't kind of get your time there. You said it's a non-profit corporation. There are usually three types. There's a mutual benefit, there's a public benefit, and there's a corporation sole. It's obviously not the latter. What type of non-profit entity is this? I don't know. I checked the allegations in the complaint, which it's an Oregon non-profit corporation. People holding shares, or is it simply something that's regulated by the Attorney General of the State of Oregon for the benefit of the public? It's, I can't, I don't know. You may want to look at that. Yeah.  Okay, I will. Okay, go ahead. In any event, I guess what our claim comes down to is this mechanism for regulating the practice of law is not appropriate. It's not appropriate or not within the federal government's power to condition a grant of federal funds to a private grantee on the private grantee agreeing to act in contravention of state law. But you do agree, I gather, that there is no case law that backs up your position. One case that I think does warrant a case close look is the Butler case. And I acknowledge that the court has retreated from it quite a bit, but I also think it still has some vitality because not only did the dissent in South Dakota versus Dole rely on it, the majority cited Butler for spending clause propositions, and the Supreme Court later cited it favorably in New York versus the United States. And so I think actually this case may come down to this court figuring out how much vitality is left in Butler's holding that the Tenth Amendment basically bars the federal government from purchasing compliance with federal regulations in an area reserved to the states rather than going, as in the South Dakota versus Dole situation, to the state itself and negotiating with the state and giving the state the choice. So you're asking us to determine whether the Supreme Court gives a damn about Butler, right? Yes. It's the other way around. It's a movie thing, guys. Thank you very much. Thank you. I appreciate your very interesting argument, and this case will be submitted and the Court will stand in recess.
judges: Tashima, Smith, Wu